IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOYCE D. JONES, ) | |
| ) | |
| Plaintiff, ) | Case No. 09 C 4313 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| COUNTRYWIDE HOME LOANS, INC., ) | |
| BANK OF AMERICA CORPORATION, MDR ) | |
| MORTGAGE CORPORATION, SPECIALTY ) | |
| TITLE SERVICES, AND DOES 1-10 ) | |
| ) | |
| Defendants. ) | |
| ) | |
| COUNTRYWIDE HOME LOANS, ) | |
| ) | |
| Counter-Claimant, ) | |
| ) | |
| v. ) | |
| ) | |
| JOYCE D. JONES, ) | |
| ) | |
| Counter-Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joyce D. Jones ("Jones") filed suit against Countrywide Home Loans ("Countrywide"), Bank of America ("BOA"), MDR Mortgage Corporation ("MDR"), Specialty Title Services ("Specialty Title"), and unknown individual defendants (collectively, "Defendants") alleging negligence, fraud, discrimination, and other predatory lending practices in connection with the refinancing of Jones's home mortgage loan. Countrywide has moved to dismiss Counts II, III, VII, VIII, and IX of Jones's Complaint. BOA and Specialty Title Services have moved to dismiss the entire Complaint. Countrywide has also asserted thirteen affirmative defenses and filed a Counterclaim seeking a declaratory judgment that if Jones lacks sufficient funds to tender the

rescission amount, she cannot state a claim for rescission of her refinanced loan. Jones has filed motions for leave to amend her Complaint, to strike statements from Specialty Title's Motion to Dismiss, to strike Countrywide's affirmative defenses, and to dismiss Countrywide's Counterclaim. For the reasons stated herein, Jones's Motion for Leave to File an Amended Complaint is granted. BOA's Motion to Dismiss is granted in its entirety, and all claims against it are dismissed without prejudice. Countrywide's and Specialty Title's Motions to Dismiss are granted in part and denied in part. As to Countrywide, Counts II and VII (ICFA claim) are dismissed with prejudice; Counts III, VIII, and IX (NIED claim) are dismissed without prejudice. As to Specialty Title, Counts I, II, III, V, VI, VII (ICFA claim), and IX (NIED claim) are dismissed with prejudice; Counts IV, VII (ITIA claim), and VIII are dismissed without prejudice. Jones's Motion to Strike Statements from Specialty Title's Introduction is denied. Jones's Motion to Strike Countrywide's Affirmative Defenses is dismissed as moot. Jones's Motion to Dismiss Countrywide's Counterclaim is denied.

## JONES'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

After BOA, Countrywide, and Specialty Title filed their Motions to Dismiss, Jones moved for leave to file an amended complaint. Such leave should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Defendants[1] oppose Jones's Motion, arguing that the proposed amended complaint does not cure the problems identified in their Motions to Dismiss. Even though Jones's proposed Amended Complaint contains a great deal of information more properly suited to her responses to the Motions, the Court grants her leave to amend in the interest of justice and because Jones appears *pro se*, requiring the Court to construe her pleadings liberally. *See*

---

[1] In her filings, Jones refers to BOA and Countrywide as "Defendants" and to Specialty Title and MDR as "Defendants' agents." Specialty Title and MDR are Defendants to this suit, and the Court accordingly refers to all Defendants as such.

*Korsunskiy v. Gonzales*, 461 F.3d 847, 850 (7th Cir. 2006) ("If the judge can see what the *pro se* litigant is driving at, that is enough."). The Court therefore applies the Defendants' motions to dismiss to Jones's First Amended Complaint.

## **DEFENDANTS' MOTIONS TO DISMISS**

**I. Background**

The following facts are taken from Jones's First Amended Complaint and are assumed to be true for purposes of deciding the Motions to Dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995).

Jones owns a home in Chicago, Illinois. In December of 2007, she refinanced her home mortgage loan through MDR, financing from Countrywide. (First Am. Compl. ¶ 29.) The closing on the loan was held at the offices of Specialty Title, a title insurance company. (First Am. Compl. ¶ 6.) Countrywide was subsequently acquired by BOA in 2008; Jones's mortgage is currently serviced by BAC Home Loans Servicing, LP, a subsidiary of BOA. (First Am. Compl. ¶ 5.)

Concerned about the national foreclosure crisis and Countrywide's role as a sub-prime lender, Jones wrote to Countrywide in October of 2008 requesting a copy of any "pooling and servicing agreement" related to the mortgage. (First Am. Compl. ¶ 31-32.) Countrywide did not provide this information and did not adequately explain its refusal to do so. (First Am. Compl. ¶ 32.) Jones subsequently had a forensic audit completed of her mortgage transaction, during which several statutory and regulatory violations were uncovered. (First Am. Compl. ¶¶ 33-39.)

Jones then wrote to Countrywide on February 5, 2009, using the address provided to her on a Notice of Right to Cancel form provided at closing and an additional contact address for Countrywide provided in her monthly statement, and informed Countrywide that she was rescinding

the mortgage transaction. (First Am. Compl. ¶ 41.) Countrywide responded to Jones on March 6, 2009 suggesting that she forward her rescission notice to the Countrywide Correspondence Unit, which she did on March 9, 2009. (First Am. Compl. ¶¶ 42-43.)

Countrywide did not respond to Jones's correspondence, but did report to at least one credit reporting agency that her account was in dispute. (First Am. Compl. ¶¶ 44, 47.) On March 25, 2009, Jones sent a tender offer letter to Countrywide offering to submit a final payment of $2054.29 on her mortgage loan, and later mailed a check in that amount to Countrywide's payment address. (First Am. Compl. ¶ 48.) Jones's tender offer letter stated that Countrywide was prohibited by federal regulation from providing derogatory reports to consumer credit reporting agencies; however, such reports were made to at least one agency following the date of the tender offer letter. (First Am. Compl. ¶¶ 53-54.)

Count I of Jones's First Amended Complaint alleges that Defendants and their agents violated the Truth in Lending Act, 15 U.S.C. § 1635, by failing to deliver valid material disclosures at the time of closing on her refinanced mortgage loan. (First Am. Compl. ¶¶ 56-62). Counts II and III allege negligent misrepresentation and breaches of fiduciary duty in connection with the loan closing. (First Am. Compl. ¶¶ 63-71 & 72-78.) Count IV alleges that Defendants and their agents discriminated against Jones, who is African-American, because of her race in that she received less favorable terms and conditions of her loan than similarly qualified Caucasian borrowers. (First Am. Compl. ¶¶ 79-82.) Counts V and VI allege that Defendants and their agents violated the Fair Housing Act, 42 U.S.C. § 3605, and the Equal Credit Opportunity Act, 15 U.S.C. § 1691, by subjecting Jones to higher interest rates and closing costs because of her race. (First Am. Compl. ¶¶ 83-96 & 97-98.) Count VII alleges that Defendants and their agents violated the Illinois

Consumer Fraud Act, 815 ILCS 505/2, and the Illinois Title Insurance Act, 215 ILCS 155/21 & 24, via their conduct in the loan transaction. (First Am. Compl. ¶¶ 99-103.) Count VIII alleges violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, in connection with the loan and Countrywide's subsequent reporting to the credit reporting agencies. (First Am. Compl. ¶¶ 104-13.) Count IX alleges that Defendants intentionally and negligently caused Jones emotional distress by mishandling her loan transaction and then "ignoring [her] efforts to correct the wrong." (First Am. Compl. ¶¶ 119-32.)

## II. Standard of Review

When considering a motion to dismiss under Rule 12(b)(6), a court must accept as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. *See Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950. A claim has facial plausibility when the pleaded factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See id.* at 1949.

## III. BOA's Motion to Dismiss

BOA moves to dismiss on the grounds that Jones has alleged no claim against it beyond stating that Countrywide was acquired by BOA in 2008. Jones argues that as a result of this

5

acquisition, BOA assumed an interest in her Note and Mortgage that legally binds BOA to the terms of the Note and Mortgage. (First Am. Compl. ¶ 5.) Jones also states that her Mortgage is currently serviced by a subsidiary of BOA, but does not allege that the subsidiary engaged in any wrongdoing. (First Am. Compl. ¶ 5.) Jones makes no allegations that BOA was involved in the negotiation of, or closing on, her loan, and thus BOA's only possible liability to her would be as Countrywide's corporate parent.

As a general rule, a parent company and its subsidiary are "two separate entities and the acts of one cannot be attributed to the other." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 944 (7th Cir. 2000). A plaintiff who seeks to "pierce the veil between a parent and a subsidary" must show that one corporation is merely "a dummy or sham for another." *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002). Additionally, the legal separation of two distinct corporate entities may only be disregarded when the circumstances are such "that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Van Dorn Co. v. Future Chemical & Oil Corp.*, 753 F.2d 565, 570 (7th Cir. 1985).

Here, Jones has not alleged any facts that would allow her to pierce the corporate veil between BOA and Countrywide and thus render BOA liable for its subsidiary's actions. *See, e.g., Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1192 (N.D. Cal. 2009). BOA's Motion to Dismiss is therefore granted.

### IV. Specialty Title's and Countrywide's Motion to Dismiss

Specialty Title moves to dismiss Jones's Complaint in its entirety, arguing that Jones has failed to state any valid claim against it. In Jones's original complaint, she made only one allegation

6

naming Specialty Title. That deficiency has been cured in the First Amended Complaint, which includes specific allegations against Specialty Title in all Counts. (*See* First Am. Compl. ¶¶ 59, 65, 75, 77, 80, 84, 98, 100, 108 & 125.)

Countrywide moved to dismiss Counts II, III, VII, VIII, and IX of the original Complaint, and answered the remaining Counts. With one exception, the First Amended Complaint has not changed the substance of the allegations against Countrywide in the answered Counts. The Court will therefore consider the arguments presented in Countrywide's Motion to Dismiss in light of the First Amended Complaint.

### A. Count I

Jones alleges in Count I that the Defendants provided invalid material disclosures to her at the loan closing in violation of the Truth in Lending Act, 15 U.S.C. § 163 ("TILA"). Specialty Title moves to dismiss, arguing that it is not liable for Jones's having received invalid material disclosures.

The TILA does not make Specialty Title, as a closing agent, liable for failure to provide required disclosures. It requires only that the "creditor" disclose to the borrower her rights under the TILA. *See* 15 U.S.C. § 1635(a) ("The creditor shall clearly and conspicuously disclose . . . to any obligor in a transaction subject to this section the rights of the obligor under this section."). Third parties, including closing agents, have no duties under the TILA, because "the creditor, and the creditor alone, is required" to make the required disclosures. *Vallies v. Sky Bank*, 432 F.3d 493, 496 (3rd Cir. 2006); *see In re Ameriquest Mortgage Co. Mortg. Lending Practices Litig.*, 589 F. Supp. 2d 987, 992 (N.D. Ill. 2008) (collecting cases).

Jones makes, and can make, no allegation that Specialty Title was a creditor of her refinancing loan, and thus cannot state a claim against it under the TILA. Count I of the First Amended Complaint is therefore dismissed with prejudice as to Specialty Title.

**B. Count II**

Count II of the First Amended Complaint alleges that Defendants "had a general duty of care toward [Jones] in arranging and brokering the financing of her home and in arranging, brokering and originating mortgage financing, and preparing loan documents for that purpose," which they violated by negligently misrepresenting erroneous information to Jones at the time of her loan closing.[2] (First Am. Compl. ¶¶ 64-69.) Specialty Title and Countrywide both move to dismiss, arguing that they owed Jones no relevant duty of care.

To state a claim for negligent misrepresentation, Jones must allege six specific elements: (1) a false statement of material fact, (2) knowledge or belief of the falsity by the party making the statement; (3) intention to induce the party receiving the statement to act; (4) action by the recipient in reliance on the truth of the statements; (5) damage to the recipient resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information. *See First Midwest Bank, N.A. v. Stewart Title Guar. Co*, 843 N.E.2d 327, 334-35 (Ill. 2006). Additionally, actions for negligent misrepresentation in which purely economic damages are sought, as is the case here, may be brought only against defendants who are "in the business of supplying information for the guidance of others in their business transactions." *Id.* at 335.

---

[2] Jones's allegation that Countrywide and Specialty Title owed her a "general duty of care" fails as a matter of law, because Illinois does not "recognize a general duty of care owed by lenders to borrowers . . . ." *LaSalle Bank Nat'l Assoc. v. Paramont Props.*, 588 F. Supp. 2d 840, 853 (N.D. Ill. 2008).

With respect to her claim against Specialty Title, Jones has not, and cannot, satisfy elements (2), (3), or (6) of a negligent misrepresentation claim. Jones alleges that the loan documents provided to her by Specialty Title contained false and misleading information, but there is no evidence that Specialty Title prepared those documents, knew their contents were false, or intended her reliance upon any alleged falsity. Moreover, Specialty Title had no duty under the TILA to communicate any information whatsoever to Jones.

As to Countrywide, if the First Amended Complaint is construed very liberally it is possible to discern facts supporting prongs (1), (4), and (5) of a negligent misrepresentation claim. Assuming as true Jones's allegation that the APR and Finance Charge on the Truth in Lending Act statement were misrepresented, then she relied upon and was damaged by false statements. Jones has not alleged facts supporting a claim, however, that Countrywide knew the statements were false or intended her reliance upon them. Nor has she alleged that Countrywide had a duty to communicate accurate information to her.

More importantly, neither Specialty Title nor Countrywide was "in the business of supplying information" in its interactions with Jones, and thus Jones may not state a negligent misrepresentation claim seeking only economic damages. *See id.* at 336. The "business of supplying information" exception, which allows negligent misrepresentation claims for purely economic damages, does not apply when a "negligent misrepresentation is contained within information which is incidental to a tangible product." *Id.* at 335 (citing *Fireman's Fund Ins. Co. v. SEC Donohue, Inc.*, 679 N.E.2d 1197 (Ill. 1997) (plans and drawings held incidental to the sale of a water supply system, which was the tangible product of the transaction)).

Here, the tangible product at issue in the transaction was the refinanced home mortgage loan. Thus, any information supplied to Jones at the closing of the loan was merely ancillary to the sale of the mortgage loan, and she may not state an economic-damages claim for negligent misrepresentation even if she were able to allege facts supporting all other elements of the claim.

Count II of the First Amended Complaint is therefore dismissed with prejudice as to both Specialty Title and Countrywide, as Jones cannot state a claim for negligent misrepresentation against them.

### C. Count III

Count III of the First Amended Complaint alleges that Defendants breached a fiduciary duty "to act in the interest of the principal and make full accurate disclosure of all material facts that might affect the principal's decision." (First Am. Compl. ¶ 73.) Specialty Title and Countrywide both move to dismiss on the grounds that they had no fiduciary duty to Jones.

In order to bring a claim for breach of fiduciary duty, Jones must first allege that such a duty exists. *See Autotech Tech. Ltd. P'ship v. Automationdirect.com*, 471 F.3d 745, 748 (7th Cir. 2006). A debtor-creditor relationship is not a fiduciary one as a matter of law, but may arise in particular circumstances. *See Pommier v. Peoples Bank Marycrest*, 967 F.2d 1115, 1119 (7th Cir. 1992). A fiduciary duty may arise "on an ad hoc basis" where an individual or entity solicits another to trust him in matters in which he represents himself to be expert as well as trustworthy and the other is not expert and accepts the offer and reposes complete trust in him . . . ." *Burdett v. Miller*, 957 F.2d 1375, 1381 (7th Cir. 1992).

Here, Jones does not adequately allege that either Countrywide or Specialty Title, or their representatives, solicited her trust as a particular expert in the mortgage field, or that she accepted

Countrywide's or Specialty Title's particular expertise and reposed her "complete trust" therein. The Complaint does not specify how Jones came to be a customer of Countrywide, and so it is possible that she may be able to allege facts meeting this standard upon amendment of her Complaint. Count III of the First Amended Complaint is therefore dismissed as to Countrywide.

With respect to Specialty Title, the First Amended Complaint states that Jones was directed by MDR that the mortgage closing would occur at Specialty Title, and apparently had no interaction with the entity or its representatives until the date of her closing. (*See* First Am. Compl. ¶ 6.) Because Specialty Title did not solicit or receive Jones's particular trust, and because she alleges no facts otherwise supporting the existence of a fiduciary relationship, she cannot state a claim for breach of fiduciary duty against it. Count III of the First Amended Complaint is therefore dismissed with prejudice as to Specialty Title.

**D. Count IV**

Count IV of the First Amended Complaint alleges that Defendants intentionally discriminated against Jones on the basis of her race "in arranging and brokering the financing of the property" in violation of 42 U.S.C. § 1981. (First Am. Compl. ¶ 80.) Jones alleges that she received terms and conditions for her loan that were less favorable than those offered to similarly qualified Caucasian borrowers. Specialty Title moves to dismiss on the grounds that Jones has failed to state a claim against it.

Section 1981 provides "a broad-based prohibition (and federal remedy) against racial discrimination in the making and enforcing of contracts." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 393 (7th Cir. 2007). Included within § 1981's umbrella are all those activities involved in "the making, performance, modification, and termination of contracts, and the enjoyment of all

benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). In order to state a § 1981 claim, Jones must show that she is a member of a racial minority, that Specialty Title had an intent to discriminate on the basis of her race, and that the discrimination concerned "one or more of the activities enumerated in the statute." *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996).

Jones has alleged that she is African-American and that the terms of her contract were less favorable than those offered to similar, non-minority, borrowers. She has thus satisfied the first and third requirements of the test. Jones has not, however, pled sufficient facts to support a claim that Specialty Title had an intent to discriminate because of her race. She has not alleged that Specialty Title was aware of her race prior to her arrival at the closing, that it was responsible in any way for the terms and conditions of her loan, or that it handled her mortgage closing in some way different from the way in which it handled the closings of non-minority individuals. Instead, she has only stated in a conclusory manner that she "was singled out and exploited in the transaction" because of her race.

Jones has therefore failed to allege sufficient facts to support a plausible claim for relief under § 1981. Specialty Title's Motion to Dismiss Count IV is granted.

**E. Counts V & VI**

Counts V & VI of the First Amended Complaint allege that Jones was "subject to higher interest rates and closing costs" because of her race, in violation of the Fair Housing Act, 42 U.S.C. § 3605 ("FHA"), and the Equal Credit Opportunity Act, 15 U.S.C. § 1691 ("ECOA"), respectively. Count V, and Count VI by reference, raise issues of broad discrimination against "minority borrowers," which the Court will not consider as Jones does not seek to proceed on behalf of a class

of those similarly situated, but only seeks redress for damages arising from her particular loan transaction. Specialty Title moves to dismiss on the grounds that it is not within the class of parties regulated under the FHA and is not a "creditor" within the meaning of the ECOA.

The FHA prohibits racial, religious, sex, disability, familial, or national origin discrimination in "residential real estate-related transactions." 42 U.S.C. § 3605(a). Such transactions include "the making or purchasing of loans or providing other financial assistance" related to residential real estate, and "the selling, brokering, or appraising of residential real property." 42 U.S.C. § 3605(b). Specialty Title is not engaged in any of these activities—it was neither the lender, nor the broker, nor the appraiser of Jones's mortgage loan, nor did it provide any other financial assistance in the transaction. Specialty Title acted as the closing agent for the transaction, but Jones has not, and from the facts provided cannot, allege that it "engag[ed] in residential real estate-related transactions" within the definitions provided by § 3605(a).

The ECOA makes it unlawful "for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction" on racial and other discriminatory grounds. 15 U.S.C. § 1691(a). The implementing regulations of the ECOA provide that a creditor is one who, "in the ordinary course of business, regularly participates in a credit decision . . . ." 12 C.F.R. 202.2(1). Because Specialty Title had no role in the decisions about whether, and under what terms, Countrywide would extend credit to Jones, Specialty Title is not a creditor of Jones's loan, and therefore could not have discriminated against her in the provision of credit.

Counts V and VI are therefore dismissed with prejudice as to Specialty Title, as its conduct in this transaction does not fall within the scope of either the FHA or the ECOA.

### F. Count VII

Count VII of the First Amended Complaint brings Illinois state law claims, pursuant to the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and the Illinois Title Insurance Act, 215 ILCS 155/21 & 24 ("ITIA"). Both Specialty Title and Countrywide have moved to dismiss Jones's ICFA claim on the grounds that it is preempted by her ECOA claim. The ECOA, 15 U.S.C. § 1691d(e), states: "Where the same act or omission constitutes a violation of this subchapter and of applicable State law, a person aggrieved by such conduct may bring a legal action to recover monetary damages either under this subchapter or under such State law, but not both." Thus, when a plaintiff chooses to pursue her ECOA claims in federal court, she waives her right to simultaneously pursue state law claims under the ICFA. *See Tribett v. BNC Mortg., Inc.*, No. 07-2809, 2008 WL 162755 at *3 (N.D. Ill. Jan. 17, 2008) (Kendall, J.). Jones's ICFA claim is therefore dismissed with prejudice as to both Countrywide and Specialty Title.

However, Jones brings her ITIA claim against Specialty Title for the first time in her First Amended Complaint. As a result, Specialty Title's Motion to Dismiss does not address the ITIA allegations contained within the amended Count VII. Jones is therefore permitted to refile her ITIA claim in her Second Amended Complaint, as directed below, so that Specialty Title may adequately respond to it.

### G. Count VIII

Count VIII brings claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681 ("FCRA"), and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 ("RESPA"). Specialty Title moves to dismiss, arguing that it was not involved in any of the activities alleged to have violated the FCRA or the RESPA. Countrywide moved to dismiss the entirety of Count VIII in its original

Motion, but then stated in its Reply that Jones had cured one of the deficiencies alleged in the Motion, and that it no longer seeks dismissal of that claim. (*See* R. 37 at 5.)

Unlike the other Counts in the First Amended Complaint, Count VIII significantly alters the scope of Jones's allegations and the Defendants' potential liability under the RESPA or the FCRA. Countrywide has responded to the First Amended Complaint in its Reply, but Specialty Title did not do so. Accordingly, Specialty Title's and Countrywide's Motions to Dismiss Count VIII are dismissed as moot. Jones may re-plead her FCRA and RESPA allegations against both Defendants.

**H. Count IX**

Count IX alleges that Defendants' refusal to respond to her inquiries and her attempts to rescind her loan resulted in the negligent and intentional infliction of emotional distress. Both Defendants move to dismiss Jones's intentional infliction of emotion distress claim on the grounds that Illinois law does not recognize IIED claims founded upon fear of economic or financial insecurity.

Three allegations are required for a successful IIED claim: (1) that the defendant's conduct was extreme and outrageous; (2) that the defendant intended for its conduct to inflict severe emotional distress or knew that there was a high probability of such a result; and (3) that the conduct actually caused severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). In order to qualify as extreme and outrageous, the defendant's conduct "must be so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community." 798 N.E.2d 75, 80-81 (Ill. 2003).

Here, Defendants argue that Jones's claim fails on the third prong, because a fear of financial security, without more, does not rise to the level of severe emotional distress. *See Whitley v. Taylor*

15

*Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 903 (N.D. Ill. 2009). However, the First Amended Complaint now includes claims of actual physical symptoms resulting from Jones's emotional distress, which separates her case from those in which purely mental anxiety had resulted. *See id.* Because these amendments counter Defendants' only developed arguments in support of their Motions to Dismiss, the Motions are denied.

Although neither Defendant addressed a negligent infliction of emotional distress claim, the title of Count IX ("Intentional/Negligent Infliction of Emotional Distress") indicates that Jones may have intended to bring such a claim. Jones has not currently pled a NIED claim under Illinois law, which requires her to show that Defendants owed her a duty, that they breached this duty, and that their breach proximately caused her injuries. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005) (citing *Parks v. Kownacki*, 737 N.E.2d 287, 296-97 (Ill. 2000)). As noted above, neither Countrywide nor Specialty Title owed Jones a general duty of care, and Jones cannot show that Specialty Title owed her a fiduciary duty. If Jones does intend to bring a NIED claim, she may do so against Countrywide if, and only if, she is first able to establish that Countrywide owed her a fiduciary duty.

**I. Jones's Motion to Strike**

As a related matter, Jones has moved to strike the statement from the introduction to Specialty Title's Motion to Dismiss that she is "asking this Court to require Specialty to pay off her house, give her the home free and clear, and in addition pay her unspecified damages." Jones alleges that this statement is untrue and constitutes an attempt to defame her character. Federal Rule of Civil Procedure 12(f) allows the Court to strike "redundant, immaterial, impertinent, or scandalous matter" from any pleading, but motions to strike are generally disfavored due to their

tendency to delay proceedings. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Allegations may be stricken "if the matter bears no possible relation to the controversy or may cause the objecting party prejudice." *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992). The statement challenged here is not an allegation, however, but a hyperbolic statement of Jones's claims, contained only within Specialty Title's introduction. The Court does not find it so irrelevant, misleading, or prejudicial as to require that it be stricken.

Jones also alleges that Specialty Title's statement is sanctionable under Federal Rule of Civil Procedure 11 because it has no evidentiary basis, as Jones has not asked Specialty Title to participate in the rescission of her loan. Jones explains that her references to Defendants and the relief that she seeks from Defendants are intended to refer only to Countrywide and BOA, and not to Specialty Title. Given that this distinction is not easily discernable from Jones's Complaint and that Specialty Title is, in fact, a Defendant to this suit, the Court does not find Specialty Title's assumption that Jones sought relief from it directly, as well as from the other Defendants, completely unreasonable. The Motion to impose sanctions is denied.

As to Jones's claim of defamation, the Court need not decide whether the statement is true, partially true, true by inference, or completely false, because there is an absolute privilege to defamation when statements are made in the course of litigation. *See Lewis v. School Dist. # 70*, 523 F.3d 730, 745 (7th Cir. 2008).

Jones's Motion to Strike Statements from Specialty Title's Introduction is therefore denied.

**JONES'S MOTION TO STRIKE COUNTRYWIDE'S AFFIRMATIVE DEFENSES**

Countrywide filed thirteen one-line affirmative defenses in its Answer to Jones's Amended Complaint. Because Countrywide will be required to refile its affirmative defenses in its answer to

17

Jones's Second Amended Complaint, as directed below, the Court need not decide whether the affirmative defenses in their current forms are adequate. Jones's Motion to Strike Countrywide's Affirmative Defenses is therefore dismissed as moot. Countrywide is warned that defenses presenting "nothing but bare bones conclusory allegations," without facts supporting the necessary elements of the alleged claims, will be stricken as meritless. *See Heller Fin., Inc.*, 883 F.2d at 1295.

## JONES'S MOTION TO DISMISS COUNTRYWIDE'S COUNTERCLAIMS

Countrywide has filed a Counterclaim seeking a declaratory judgment that if Jones cannot tender to Countrywide the loan proceeds, she is not qualified for rescission of her loan under the TILA, and that if she is financially able to tender the loan proceeds, she must tender the proceeds as a condition precedent to Countrywide's obligation to cancel the Deed of Trust and rescind the loan. (*See* R. 22 at 26-28.) Jones has answered the Counterclaim, denying that Countrywide is entitled to any declaratory relief. (*See* R. 35 at 13-15.) The last line of Jones's answer moves to dismiss Countrywide's Counterclaim. (*See* R. 35 at 15.)

Construing her filings liberally, Jones has adequately answered the Counterclaim, but stated no grounds upon which a motion to dismiss under Federal Rule of Civil Procedure 12(b) could be sustained. Countrywide has sufficiently stated a claim upon which declaratory relief may be granted, and Jones alleges only that it is not entitled to any such relief on the facts of this case. Jones's Motion to Dismiss is therefore denied.

## DEFENDANTS NOT OTHERWISE ADDRESSED IN THIS ORDER

Finally, the Court notes that although this Complaint was filed on July 17, 2009 and a summons for Defendant MDR was properly returned executed on August 26, 2009, no attorney from

MDR has filed an appearance and MDR has not answered the Complaint. MDR is therefore defaulted pursuant to Federal Rule of Civil Procedure 55.

Defendants "Does 1-10" are alleged to be individuals who otherwise "engaged in or aided and abetted" the wrongdoing alleged in the First Amended Complaint. (First Am. Compl. ¶ 8.) Jones has stated no claims against individual defendants in the First Amended Complaint. Defendants Does 1-10 are therefore dismissed.

## **CONCLUSION AND ORDER**

Jones's Motion for Leave to File an Amended Complaint is granted. BOA's Motion to Dismiss is granted in its entirety, and all claims against BOA are dismissed without prejudice. Countrywide's Motion to Dismiss is granted in part with prejudice, granted in part without prejudice, and dismissed as moot with respect to Count IX (IIED claim). Specialty Title's Motion to Dismiss is granted in part with prejudice, granted in part without prejudice, and dismissed as moot with respect to Count IX (IIED claim).

Jones is directed to file a Second Amended Complaint within 14 days of the date of this Order. In her Second Amended Complaint, Jones may not replead those claims that this Court has dismissed with prejudice.

Jones's Motion to Strike Statements from Specialty Title's Introduction is denied. Jones's Motion to Strike Countrywide's Affirmative Defenses is dismissed as moot.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: February 11, 2010